ROBERT L. BLAND, Judge.
On January 8, 1944 a collision occurred in the town of Wayne in Wayne county, West Virginia, on state route No. 52 between a 1941 Chevrolet 1 34-ton truck belonging to claimant Theresa Brindis and a truck belonging to the state road commission. The former was repaired by the Price Motor Company of Williamson at a cost of $243.43. Said claimant Theresa Brindis carried collision insurance on said truck with the Queen Insurance Company of America. The policy contained a $100.00 deductible clause. The insurance company paid to her the sum of $131.43. The Queen Insurance Company of America joins with claimant Theresa Brindis in this case and cotends that it should be repaid said sum of $131.43 while claimant Brindis seeks an award of $112.00, $12.00 of said amount representing a towing charge that was paid by her in addition to the amount paid by the insurance company.
In the early morning of the above date Thomas Brindis, a fruit merchant of Williamson, West Virginia, driving the truck owned by his wife, claimant Theresa Brindis, left that city en- *82 route for Huntington, in said state. As he passed through the town of Wayne, the county seat of Wayne county, about sixty miles distant from Williamson, the truck he was driving and a' state road commission truck, driven by Charles Bradshaw, collided.
In addition to the driver Brindis there were two other occupants of the truck when the accident occurred, namely Roy Temper and a soldier now in France. Said Thomas Brindis and Roy Temper testified in support of the claims.
Brindis stated that the accident occurred as he came up toward the courthouse as he was coming out of a curve in the road, practically a horseshoe curve. According to his testimony he was going around this curve. He said: “Just about the time we straightened up to go up the hill is where we hit.” The state truck was approaching from the opposite direction. Brindis was driving uphill and the state truck was coming downhill. Brindis was driving between five and seven miles an hour. The road was slippery that morning. As he was straightening out of the curve he met the other truck. When he first saw it it was from twenty to thirty feet away. He said that when he perceived the state truck he stopped and got over as far as he could on the road and that he was on his side of the road. The state truck was not traveling very fast. After the collision there might have been about five or six feet separating the two vehicles, that is, the front of each truck. And his truck was still on his side of the road. It was off the road, on his side, as far as he could" get, and the state truck was setting back about in the middle of the highway. A bank and a ditch prevented Brindis from getting any farther than the position occupied by his truck.
The accident was investigated by a member of the department of public safety who made measurements of the positions of the two trucks. A deputy sheriff of Wayne county also assisted in investigating the accident. When Brindis saw the state truck approaching, he said he “put the brakes on. It didn’t take long to stop because we were going slow.” The driver of the state truck applied his brakes about the same time he saw Brindis. *83 Brindis admits that the road was very slippery and that there was snow and ice on it. He had chains in the truck but was not using them.
The witness Temper testified in substantial corroboration of the evidence given by Brindis. He said there was plenty of room on the road for two trucks to get through.
Upon the testimony of these two witnesses claimants rest their case.
There is a sharp conflict in the testimony offered by the claimants in support of the claims and the testimony adduced by the state in opposition to the claims.
It is shown by the testimony of Charles Bradshaw, a grader operator and truck driver for the road commission, who drove the state truck at the time of the accident, that the road had been slick and slippery the night before and that on the morning of the accident an assistant supervisor had directed him and other employees to obtain a truck and get cinders and place them on the hill, where vehicles had been “hung up.” He did so. Two other employees were in the truck with him. The road was slippery and it was snowing. He testified: “When I started around that curve, this truck come out of that curve, just along about the point of that curve there, and when he swung out he swung out on my side of the road. I didn’t see him until we was within twenty or thirty feet of one another. I put my brakes on. It was slick and I had chains on my car, but the road was pretty slick and icy.” Witness was driving on his side of the road. Brindis was on his side of the road, but when he swung around the curve he swung the front end of his vehicle on Bradshaw’s side of the road. When the collision occurred the front end of the Brindis truck was over on the Bradshaw side of the highway. The road at the point where the accident occurred was 18 feet in width. On the side on which Bradshaw was driving the shoulder was two and one-half feet in width and on the side that Brindis was driving the shoulder was three feet in width. It was a brick road, but since the occurrence *84 of the accident has been widened and has a black top surface on it at this time. The front end of the Brindis car was over the center or white line of the road. This fact was discovered after the collision occurred.
Ira Elliott, a witness for the state who was in the car operated by Bradshaw, testified that when they went to obtain gravel or cinders for the road they found a few cars hung up on the hill. He heard Roy Lockhart, also an occupant of the truck exclaim when he saw the Brindis truck approaching, “Look out Charlie!” The trucks were just ready to jam at that time. This witness also testified that the road was wide enough for two cars to pass if both stayed on the proper side of the road. When the accident happened it was snowing pretty hard and the highway was slick. The front end of the state truck was turned to the right side of the road. There were chains on the rear wheels of the state truck.
Roy Lockhart, one of the occupants of the state truck, testified that the road was "awful slick.” He further testified that he warned Bradshaw, the driver of the state truck, to look out and about that time the two trucks collided. He saw the Brindis car approaching and for that reason warned the driver of the state truck. He declared that the front end of the Brindis vehicle was over some from the middle of the road. There was snow and ice on the road and the state truck was on its proper side.
Andrew Barbour, a deputy sheriff of Wayne county, called as a witness for the state, testified that he made an investigation of the accident and assisted Trooper Langford in making measurements of the positions of the two trucks. He stated that the state truck had chains on and that the Brindis truck did not. The Brindis truck, he declared, was more on the state truck’s side of the road than on its own side. The front end of the Brindis truck was over on the state truck's side of the road. The only track marks that could be seen were those of the Brindis truck. The witness also said that it was snowing as hard as he had ever seen it snow.
*85 When upon the hearing of a claim asserted against the state the evidence is conflicting but preponderates in favor of the agency involved, an award will be denied.
An award will be denied in each case and the claims dismissed.